**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **FRANTZ DESIGN, INC.** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL CASE NO. 6:19-cv-00452** |
| | § | |
| | § | |
| **DIAMOND ORTHOTIC** | § | |
| **LABORATORY, LLC and DR. STEVEN** | § | |
| **OLMOS (dba, TMJ & SLEEP** | § | |
| **THERAPY CENTRE** | § | |
| **INTERNATIONAL),** | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

1.      This is a lawsuit by Frantz Design, Inc. ("Frantz") for relief from federal trademark infringement, false advertising, false designation of origin, trade dress infringement, Texas common law trademark infringement, and other misconduct and unlawful acts of Defendants Diamond Orthotic Laboratory, LLC ("Diamond Orthotic") and Dr. Steven Olmos ("Olmos," collectively with Diamond Orthotic, the "Defendants"). Frantz invented the Elastic Mandibular Advancement (EMA) device ("EMA"), an FDA-approved device that treats both sleep apnea and snoring. Without Frantz's authorization, Defendants Diamond Orthotic and Olmos have manufactured and sold Frantz's EMA devices, used Frantz's trademarks and trade dress, and created a copy of the EMA—the DDSO device— that is not FDA approved and which Defendants promote both as a "digital EMA" and for use with EMA components.

**I.      PARTIES**

2.      Plaintiff Frantz Design, Inc., is a corporation with its principal place of business in Austin, Texas.

3.      Defendant Diamond Orthotic Labs, LLC is a California limited liability company owned by Dr. Steven Olmos. Diamond Orthotic may be served with process by serving its agent for service of process, Susan Olmos, at 7879 El Cajon Blvd, La Mesa, CA 91942.

4.      Dr. Steven Olmos is a natural person residing in California. Upon information and belief, he may be served with process at his residence, 1096 Bremen Way, Alpine, California 91901 or at his usual place of business, 7859 El Cajon Blvd. Ste. A., La Mesa, California 91942, or wherever he may be found. Upon information and belief, in addition to being the owner and chief executive of Diamond Orthotic, Olmos does business in his individual capacity under the brand "TMJ & Sleep Therapy Centre International" ("TMJ Sleep"). According to its website, TMJ Sleep shares the same business address as Diamond Orthotic.[1] Upon further information and belief, Diamond Orthotic and Olmos use TMJ Sleep, at least in part, as a distribution channel for providing the products at issue in this lawsuit (both Plaintiff's and Defendants' products) to TMJ Sleep's national network of licensed TMJ & Sleep Therapy Centres.

## II.    JURISDICTION AND VENUE

5.      The claims for federal trademark infringement, false designation of origin, false advertising, and trade dress infringement arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et. seq*. Therefore, this Court possesses subject matter and original jurisdiction over those claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

6.      In the alternative, pursuant to 28 U.S.C. § 1332(a), this Court possesses subject matter and original jurisdiction over all claims asserted herein because complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

---

[1] https://tmjtherapycentre.com/contact-us/

7.      This Court has jurisdiction of the claims arising under state law pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

8.      This Court may exercise specific jurisdiction over Defendants because they have sufficient minimum contacts with the forum such that exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice. Defendants purposefully availed themselves of the privilege of doing business in the forum and there is a nexus between such acts and the asserted claims. Defendants have committed and continue to commit acts of trademark infringement, false advertisement, false designation of origin in the forum by offering for sale and selling products with infringing marks in the forum – including at the American Academy of Dental Sleep Medicine's 2019 Annual Meeting in San Antonio, Texas and through TMJ & Sleep Therapy Centre International in Flower Mound, Texas, a licensee of TMJ Sleep. Defendants have also delivered products it falsely advertised and/or bearing infringing and/or unauthorized trademarks into the stream of commerce with the expectation that they would be purchased or used by consumers in the forum.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged in the Complaint occurred in this District, and Frantz's principal place of business exists in this District such that a substantial part of the property that is the subject of the action is situated in this District.

### III.      FACTS

#### A.      Plaintiff's EMA Device

10.      Dr. Donald Frantz invented the Elastic Mandibular Advancement (EMA) Device ("EMA Device") in 1993. The EMA Device is an FDA-approved oral appliance for the treatment of snoring and obstructive sleep apnea. It is designed to advance the mandible and open the mouth for less restrictive airflow during sleep.



**Plaintiff's EMA Device**

11.      Frantz owns the following registered trademarks on the Principal Register of the United States Federal Trademark Register: EMA; EMA FIRST STEP; and FIRST STEP.

12.      The EMA trademark (Reg. No. 3,781,051) for International Class 5 was registered on April 27, 2010 and first used in commerce at least as early as February 16, 1996.

13.      The EMA trademark (Reg. No. 5,657,223) for International Class 10 was registered on January 15, 2019 and first used in commerce at least as early as January 3, 1996.

14.      The EMA FIRST STEP trademark (Reg. No. 4,511,813) for International Class 10 was registered on April 8, 2014 and first used in commerce at least as early as June 10, 2011.

15.      The FIRST STEP trademark (Reg. No. 5,262,220) (collectively, with the foregoing registered marks, the "Frantz Registered Marks") for International Class 10 was registered on August 8, 2017 and first used in commerce at least as early as June 16, 2011.

16.      In addition to the Frantz Registered Marks and the goodwill resulting from Frantz's use of its registered marks, Frantz owns common law trademark rights and associated goodwill in the EMA stylized mark (the "EMA Stylized Mark") (collectively, with the Frantz Registered Marks, the "Frantz Marks"):



17.     The EMA Device, inclusive of its ornamental design, is distinctive within the industry and has been commercially successful. It has achieved valuable goodwill and secondary meaning. The EMA Device is a unique, well-known, and readily recognizable device within the dental orthotics industry. *See* **Exhibit A**—Decl. of Sonnie Bocola at ¶ 5.

18.     Frantz owns, and has extensively and continuously used, distinctive, non-functional design elements in the EMA Device that act as source identifiers. The EMA Device is distinguishable from other products by its overall look and appearance, including the styling of the buttons and the color elastic bands connecting the upper and lower portions of the device (the "EMA Trade Dress").

19.     Frantz licenses labs to manufacture the EMA Device through Myerson, LLC, a large supplier of dental products, including the EMA Device.

20.     Myerson maintains an EMA Device webpage on its website.[2] It includes a link to a list of labs authorized to manufacture and sell the EMA Device (including components and accessories such as straps for the EMA Device).[3] The EMA page states "EMA is only available through Myerson's authorized network of dental laboratories."

21.     The Myerson EMA webpage contains instructions for labs that want to become certified and licensed to manufacture EMAs. It notes a "certification process that EMA authorized labs undergo to ensure high quality of fabricated oral appliances." As shown, nearly 300 labs in the United States have completed this certification process.

### B.      Diamond Orthotic's Unauthorized EMA Production and Sales

22.     Diamond Orthotics is not included on the Myerson list of authorized EMA labs.

---

[2] Link to Myerson EMA Page (last accessed July 21, 2019).

[3] Link to Authorized Labs (last accessed July 21, 2019).

23.     Nonetheless, Diamond Orthotic Labs features the EMA prominently on its own website as a product it manufactures and sells.[4] In promoting itself on its website as a source of the EMA, Diamond Orthotic, without the authorization of Frantz, uses and displays each of the Frantz Marks:







---

[4] https://diamondorthoticlab.com/ema.html; http://diamondorthoticlab-com.3dcartstores.com/Sleep_c_13.html

24.     In addition to offering the EMA Device, Diamond Orthotic offers for sale EMA Device straps:[5]



25.     Diamond Orthotic's promotion of the EMA Device is not limited to its website. At the American Academy of Dental Sleep Medicine's 2019 Annual Meeting in San Antonio, Texas (the "Conference"), a representative of Diamond Orthotic falsely represented to Plaintiff's private investigator that Diamond Orthotic was licensed to manufacture the EMA Device.

26.     Upon information and belief, Diamond Orthotic falsely represented to others at the Conference and to the industry at large that it is licensed to manufacture the EMA Device.

27.     During the Conference, Diamond Orthotic displayed the EMA Device as being offered for sale by Diamond Orthotic, and Diamond Orthotic's representative stated that Diamond Orthotic makes the EMA.

### C.          Diamond Orthotic's DDSO Device

28.     Diamond Orthotic also manufactures, markets, and sells what it calls a "DDSO" (Diamond Digital Sleep Orthotic) device (the "DDSO Device").[6]

---

[5] http://diamondorthoticlab-com.3dcartstores.com/Sleep_c_13.html
[6] https://diamondorthoticlab.com/DDSO.html



**Diamond Orthotic DDSO Device[7]**

29.     Upon information and belief, the DDSO Device is manufactured from a 3-D printing blueprint of the EMA created by Sonny Bocala, who when he created the 3-D EMA blueprint was acting with Frantz's authorization. At the time, Mr. Bocala was business partners with Defendant Olmos, and they owned and operated T&S Labs. Frantz terminated its authorization regarding Mr. Bocala's 3-D printing design before production began, and Mr. Bocala ceased work. *See* Ex. A— Bocala Decl. at ¶¶ 7—14.

30.     During this period, Mr. Bocala discovered that an employee of T&S Labs, Matt Rago, had made entries on the digitized EMA blueprints that Mr. Bocala had previously created.

31.     Around the same time, Mr. Bocala discovered that Defendant Olmos had instructed Rago to solicit other T&S employees to join a competing lab.

---

[7] The picture is a screenshot from a video taken of Diamond Orthotic Lab's booth during the American Academy of Dental Sleep Medicine's 2019 Annual Meeting, June 7-9, 2019.

32.     Upon information and belief, Rago and Defendant Olmos took Mr. Bocala's 3-D EMA blueprint and now use it to manufacture the DDSO Device.

33.     Upon information and belief, Defendants promote the DDSO Device to customers, potential customers, and the industry as a "digital EMA."

34.     The digital DDSO manufactured by Diamond Orthotic is so similar to the EMA Device that it creates confusion because the hooks, bands, and design are identical. *See* Bocala Decl. at ¶16.

35.     While devices promoted as addressing snoring difficulties do not require FDA approval, devices promoted as treating sleep apnea do require FDA approval.  Benefits of FDA approval include quality and safety assurance as well as insurance coverage.  Upon information and belief, the DDSO is not approved by the FDA. A copy of Defendant Diamond Orthotic's lab form is attached hereto as **Exhibit B**. It indicates FDA approval (and the related medical code) for Plaintiff's EMA; no such indication is shown for the DDSO. Despite the DDSO's lack of FDA approval, Defendant Diamond Orthotic's website states that the DDSO is "effective for the treatment of snoring, mild to moderate Obstructive Sleep Apnea, and severe Obstructive Sleep Apnea in patients that cannot tolerate CPAP." Diamond Orthotic effectively represents to its customers that the DDSO is FDA certified for the treatment of obstructive sleep apnea when it is not.

36.     At the Conference, Matt Rago even acknowledged that the DDSO bands and the EMA bands are intentionally *interchangeable* and that at certain titrations *doctors are instructed to use EMA bands because they work better*.  As Rago stated at the Conference, the DDSO straps are nylon, which are unsuitable for treating sleep apnea and suitable only for treating snoring. EMA straps, on the other hand, enable the EMA to treat sleep apnea, as approved by the FDA. As a

workaround to the DDSO's unsuitability for treating sleep apnea, Defendants encourage their customers to use EMA straps with the DDSO.

## IV.   CAUSES OF ACTION

37.    All conditions precedent to Plaintiff's rights of recovery on all of the claims asserted herein have been performed or have occurred or have been waived or excused.

38.    If and to the extent that they conflict, the allegations and causes of action asserted herein are pled in the alternative.

39.    On information and belief, and because of the extent of his ownership, control, and direction of Defendant Diamond Orthotics, LLC, Defendant Olmos necessarily participated in the conduct that supports the causes of action detailed below.

## COUNT 1 – TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1))

40.    Plaintiff repeats and re-alleges the foregoing paragraphs of the Complaint as though set forth fully herein.

41.    Defendants, acting without the consent or authorization of Frantz, have used reproductions, copies, and/or colorable imitations of each of the Frantz Marks to sell EMA and DDSO products.

42.    Defendants' use of the Frantz Marks was, and is, likely to cause confusion, likely to cause mistake, and likely to deceive.

43.    Defendants performed the acts upon which this claim is based with the knowledge and intent that they were likely to cause confusion, to cause mistake, and to deceive.

44.    As a direct and proximate result of Defendants' infringing and unlawful acts, Frantz has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

## COUNT 2 – FALSE ADVERTISING
## (15 U.S.C. § 1125(a))

45.     Plaintiff repeats and re-alleges the foregoing paragraphs of the Complaint as though set forth fully herein.

46.     Defendant Diamond Orthotic has made false or misleading statements regarding its DDSO Device.  By advertising and promoting the DDSO to treat sleep apnea—a medical condition for which a treatment device requires FDA approval—Defendant Diamond Orthotic's representations either deceive or have a tendency to deceive a substantial number of its customers regarding the FDA status of the DDSO product.  Because FDA approval is an indicator of a device's quality, safety, and eligibility for insurance coverage, Defendant Diamond Orthotic's representations are likely to influence purchasing decisions.

47.     As indicated at least by Diamond Orthotic's online shipping instructions and nationwide network of labs, the DDSO is sold nationwide and travels in interstate commerce. Additionally, Defendants caused the statements constituting false advertising to enter interstate commerce by publishing them on the internet.

48.     Plaintiff is at least likely to be injured by Defendant Diamond Orthotic's representations because Plaintiff sells a competing product and because Defendant Diamond Orthotic encourages use of the DDSO in combination with Plaintiff's FDA-approved product.

49.     As a direct and proximate result of Defendants' unlawful acts, Frantz has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

## COUNT 3 – FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

50.     Plaintiff repeats and re-alleges the foregoing paragraphs of the Complaint as though set forth fully herein.

51.     Defendants' aforementioned acts (including, but not necessarily limited to, unauthorized use of the EMA Stylized Mark; unauthorized use of EMA components with Defendants' DDSO Device; and describing the DDSO as a "digital EMA") constitute false designation of origin likely to cause confusion, to cause mistake, and to deceive consumers as to the origin, sponsorship, and approval of the EMA Devices and DDSO Devices offered for sale and distributed by Defendants.

52.     Defendants have made, and will continue to make, substantial profits and gain from their misconduct to which they are not entitled in law or equity.

53.     As a direct and proximate result of Defendants' infringing and unlawful acts, Frantz has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

## COUNT 4 – TRADE DRESS INFRINGEMENT
### (15 U.S.C. § 1125(a))

54.     Plaintiff repeats and re-alleges the foregoing paragraphs of the Complaint as though set forth fully herein.

55.     The EMA Trade Dress is non-functional.

56.     The EMA Trade Dress is unique and distinctive as to the source of the EMA and has acquired secondary meaning.

57.     Defendants' use in commerce of the EMA Trade Dress to advertise, market, promote, distribute, offer for sale, and/or sell the EMA Devices and the DDSO devices, without Frantz's consent, is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly

believing that Defendants are licensees, authorized distributors, or affiliates of Frantz and/or that Defendants, their activities, and/or their products, are authorized, endorsed, sponsored, or approved by Frantz.

58.    Defendants have made, and will continue to make, substantial profits and gain from their unauthorized use of the EMA Trade Dress to which they are not entitled in law or equity.

59.    The acts of Defendants alleged herein were intentional, willful, and made with bad faith.

60.    Defendants' acts and conduct complained of herein constitute federal trade dress infringement in violation of 15 U.S.C. § 1125(a).

61.    As a direct and proximate result of Defendants' infringing and unlawful acts, Frantz has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

COUNT 5 – TEXAS COMMON LAW TRADEMARK INFRINGEMENT

62.    Plaintiff repeats and re-alleges the foregoing paragraphs of the Complaint as though set forth fully herein.

63.    The Frantz Marks are inherently distinctive, have acquired substantial secondary meaning, and are eligible for protection.

64.    Frantz is the senior user of the Frantz marks.

65.    Defendants' acts are likely to cause confusion and constitute trademark infringement under the common law of the State of Texas.

66.    As a result of the acts alleged herein, Frantz has suffered damage and Defendants have acquired substantial profit at Frantz's expense. Unless the foregoing acts are restrained and enjoined, Frantz has no adequate remedy at law.

V.    JURY DEMAND

67.    Plaintiff hereby demands a trial by jury on all claims, issues, and damages so triable.

## VI.   PRAYER

Plaintiff respectfully requests that this Court enter judgment in their favor against Defendants granting the following relief:

A.      Declarations that Defendants have infringed each of the Frantz Marks;

B.      A declaration that Defendants have infringed the EMA Trade Dress;

C.      That Defendants and those persons and entities acting in concert or in participation with Defendants, and their respective affiliates, successors, and assigns, along with their directors, officers, agents, servants, and employees, be permanently enjoined from:

1.      Manufacturing, advertising, offering for sale, selling, or distributing any EMA Device;

2.      Manufacturing, advertising, offering for sale, selling, or distributing any DDSO Device

3.      Using any 3-D blueprint of the EMA to create, manufacture, sell, or offer for sale any device or other product;

4.      Committing any acts likely to cause the public to believe that any of Defendants' products are Frantz products or are authorized by Frantz, in whole or in part, unless they are entirely such;

5.      Using any Frantz Marks or trade dress in any manner likely to cause confusion, mistake, or deception.

6.      Competing unfairly with Frantz in any manner, including using false designations of origin or false representations that misrepresent the nature, characteristics, qualities, source, or origin or Defendants' products or commercial activities.

7.      Attempting, causing, or assisting any of the above-described acts;

D.      An Order permitting Frantz, upon ten (10) days' notice for the next three (3) years,

to inspect and audit Defendants' inventory and business records to the extent necessary to determine compliance with the injunction issued by the Court;

E.      An Order, pursuant to 15 U.S.C. § 1118, directing the seizure, delivery, and destruction of each good within Defendants' possession, custody, or control that infringes Frantz's rights in and to any of the Frantz Marks or the EMA Trade Dress.

F.      An Order directing Defendants, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Frantz's counsel within thirty (30) days after service of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

G.      An Order directing an accounting to determine Defendants' profits resulting from their unlawful activities;

H.      An Order awarding Frantz compensation for any and all damages, injury, or harm pursuant to 15 U.S.C. § 1117 and Texas law;

I.      An Order directing Defendants to pay, jointly and severally, full restitution and/or disgorgement of all profits, including any lost profits, and benefits that may have been obtained by Defendants as a result of their wrongful conduct pursuant to 15 U.S.C. § 1117.

J.      An Order awarding Frantz treble damages resulting from Defendants' willful and intentional conduct, attorneys' fees and costs, and any other relief to which Frantz is entitled pursuant to 15 U.S.C. § 1117.

K.      An Order awarding Frantz punitive and exemplary damages as permitted by Texas

law;

L.      An Order awarding Frantz pre-judgement interest;

M.      An Order awarding Frantz any further relief this Court deems just and equitable.


Date:  August 5, 2019                          Respectfully submitted,


                                               **TAYLOR THUSS PLLC**
                                               919 Congress Avenue, Suite 900
                                               Austin, Texas 78701
                                               512.368.9186 (Tel)
                                               512.368.9014 (Fax)

                                               By: */s/ Donald R. Taylor*
                                                   Donald R. Taylor
                                                   State Bar No. 19688800
                                                   Email:  don@taylorthuss.com
                                                   Natalie Taylor
                                                   State Bar No. 24056412
                                                   Email:  natalie@taylorthuss.com
                                                   Pierce MacGuire
                                                   State Bar No. 24106236
                                                   Email: pierce@taylorthuss.com

                                                   Bradley Coburn
                                                   State Bar No. 24036377
                                                   Email: coburn@sheltoncoburn.com
                                               **SHELTON COBURN LLP**
                                               4235 Hillsboro Pike, Suite 300
                                               Nashville, Tennessee 37215
                                               (615) 488-1770 telephone
                                               (512) 263-2166 facsimile

                                               **ATTORNEYS FOR PLAINTIFF FRANTZ
                                               DESIGN, INC.**